[No. 31796.   Department One.   April 24, 1952.]

FREDERICK B. COHEN, *Appellant,* v. THE CITY OF BREMERTON *et al., Respondents.*[1]

*John E. Bowen,* for appellant.
*Merrill Wallace,* for respondent city of Bremerton.
*Jack Hullin,* for respondent Malaspina & Napoli.

GRADY, J.—This action was brought against the city of Bremerton and a contractor to recover a judgment for damages caused to a bulkhead supporting the property of appellant by reason of negligent backfilling of a trench excavated near the bulkhead. The court made findings of fact adverse to the claim of appellant and entered a judgment dismissing the action.

The appellant was the owner of residence property on Port Washington Narrows in the city of Bremerton. The front of the property was supported by a concrete bulk-

[1] Reported in 243 P. (2d) 473.

head. The bulkhead also served the purpose of protecting the embankment from being washed and eroded by the tidal waters. It had been in place for about eighteen years prior to the time when it was damaged. The concrete base of the bulkhead extended downward into the beach soil, but did not rest on a rock or hardpan formation. Appellant acquired the property in 1941. Prior to this time, the city of Bremerton had constructed an eight-inch pipeline for sewer carriage a few feet from the bulkhead. The pipeline was not wholly covered, and it had become almost entirely exposed by January, 1950.

In July, 1949, the respondents constructed a sewer approximately eleven feet from the bulkhead. The sewer trench was excavated to a depth of about three and one half feet and a width of about three feet. After the part of the pipeline in front of appellant's property was laid, the trench was backfilled with a bulldozer. There is some dispute in the testimony as to whether the backfilling was done by the use of the same beach soil that had been excavated, or whether a quantity of softer soil washed onto the beach by a small stream was also used. The easement grant provided that the top of the pipeline should be not less than one foot below the surface of the ground and that restoration to its original condition, so far as reasonably possible, should be made.

On January 13, 1950, a severe storm occurred. The record shows that it was an unusual storm and nothing like it in severity had taken place over a period of many years past. On the following morning, appellant discovered that his bulkhead had collapsed. The cause of the collapse of the bulkhead was the issue presented to the court.

An engineer called by appellant advanced the theory that when the excavation of the sewer trench was made, the stability of the ground between it and the bulkhead was destroyed; that the trench had not been backfilled with the same soil that had been excavated and the filling had not been tamped and made solid; that in re-establishing stability and seeking a new base of repose, there was a gradual

and progressive movement of the soil, which affected the ground under the wall; that the storm did not have anything to do with the breaking of the bulkhead.

The theory advanced by respondents was that the waters lashed up against the bulkhead by the storm washed away the soil under it and caused it to collapse.

We gather from the remarks made by the trial judge when making his decision that he believed the conclusion reached by the engineer as to the cause of the collapse of the bulkhead was based upon theory only, and was wholly unsupported by facts establishing a causal connection between the sewer trench and the manner it was backfilled and the settling and breaking of the bulkhead. He regarded the theory advanced as not at all tenable and highly improbable. It seemed to him that the only logical conclusion that could be reached was that the very unusual and exceptionally severe storm that occurred caused the waters to wash the soil supporting the bulkhead to such an extent that it collapsed of its own weight.

The arguments made by appellant in his brief, and the references made to the evidence and exhibits by him, have been considered by us, and we find it impossible to accept the view advanced by the expert witness with reference to the cause of the collapse of the bulkhead. We are satisfied that, if the storm had not occurred, the bulkhead would have remained in the same condition that had existed ever since its construction. In our opinion, there is no evidence that can be given probative value sufficient to support a finding of fact that the excavation made affected lateral support so as to permit a gradual mass movement of the strip of beach between it and the bulkhead to take place. We have given consideration to the evidence relative to what appeared to have been surface changes occurring subsequent to the excavation and backfilling of the sewer trench, but we cannot connect them with a mass movement of the strip of beach away and from under the foundation of the bulkhead.

There was no question of veracity of witnesses to be determined by the trial court which we are called upon to

review. The record presents two opposing theories as to cause and effect. The court accepted the one which seemed the most reasonable and probable according to the facts presented. We find ourselves in accord with the conclusion reached by the trial court.

The judgment is affirmed.

SCHWELLENBACH, C. J., MALLERY, DONWORTH, and WEAVER, JJ., concur.